**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed / Docketed
November 16, 2007

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAPINSICK, JOHN AND GINA, | ) | Case No. 07-10662-R |
| | ) | Chapter 7 |
| Debtors. | ) | |

**ORDER APPROVING TRUSTEE'S AMENDED**
**MOTION TO APPROVE COMPROMISE OF CONTROVERSIES**

On August 29, 2007, the Amended Motion to Approve Compromise of Controversies and Notice of Opportunity for Hearing (Doc. 36) filed by Scott P. Kirtley, Trustee in the above-captioned case (the "Trustee") on July 3, 2007 (the "Motion to Settle"), and the Debtor's [sic] Objection to the Motion to Approve Compromise of Controversies (Doc. 41) filed by John and Gina Papinsick (the "Debtors") on July 23, 2007 (the "Objection"), came on for hearing. Scott P. Kirtley appeared as the Trustee, and Greggory Colpitts appeared for the Debtors. The Court heard testimony of three witnesses: Aaron C. Peterson, the Trustee and John Papinsick.

The Court, having reviewed the Motion to Settle and the Objection, having heard the arguments of counsel and testimony of witnesses, and having reviewed the evidence and the relevant legal authority, finds and concludes as follows.

**I.      Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A) and (O); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.     Findings of fact**

In 1998, the Debtors purchased a home in Tulsa, Oklahoma, from an individual owner. The house was originally built by Murphy Construction ("Murphy"). Prior to the Debtors' purchase of the property, Knox Inspection Services, Inc. ("Knox") conducted an inspection of the home. Mr. Papinsick testified that Knox's inspection report did not reveal any structural problems with the property. Within a year after purchasing the home, the Debtors discovered that the structural integrity of the house was compromised and that the house was sinking. The Debtors allege that Knox should have discovered the structural defect during their inspection and recognized that there was not adequate support beneath the piers securing the foundation of the house.

The Debtors retained American Leveling Company of Tulsa, Inc., a/k/a "Ramjack" ("American") to assess and correct the structural problems with their home. American placed "jacks" under the support piers of the house in an attempt to "lift" and support the foundation. The Debtors allege that when American attempted to lift the house using the jacks, the support piers tilted. The Debtors allege that American failed to properly evaluate the soil under the home to determine if the soil was adequate to support the weight of the jacks that American installed.

In late 2002 or early 2003, Mr. Papinsick was diagnosed with Myasthenia Gravis (an autoimmune neuromuscular disease), which required brain surgery and caused serious health problems that rendered him unable to work. The Debtors attempted to sell their home for a year and a half for approximately $440,000. The Debtors contend that the structural problems prevented them from selling their home. In 2003, the Debtors filed a lawsuit against Murphy, American, and Knox in the District Court in and for Tulsa County, Oklahoma, Case No. CJ-2003-3601, and asserted causes of action for breach of contract, breach of implied and express warranty, and misrepresentations with respect to the Debtors' home (the "State Court Case"). The Debtors settled their claims against Murphy through mediation for approximately $57,000 (the "Murphy settlement"). American and Knox refused to participate in mediation.

Prior to the filing of this bankruptcy case, a foreclosure action was filed against the Debtors' property. On April 10, 2007, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On June 18, 2007, the Court entered an order authorizing the Trustee to retain Aaron C. Peterson, as special counsel, to pursue the Debtors' remaining claims in the State Court Case on a contingency fee basis of fifty percent of the amounts recovered after reimbursement of all expenses.[1] After evaluating the merits of the State Court Case and the surrounding circumstances, the Trustee and his special counsel determined that settlement of the State Court Case was in the best interest of the estate. The

---

[1] Prior to commencement of this bankruptcy case, Mr. Peterson represented the Debtors in the State Court Case.

Trustee entered into settlement negotiations with Knox and American. The parties agreed to settle the remaining claims for $9,500 in exchange for dismissal of the State Court Case with prejudice. On July 3, 2007, subsequent to filing the Motion to Settle, the Trustee filed the Motion to Authorize Payment of Fees of Special Counsel and Notice of Opportunity for Hearing seeking authority to pay $4,750 to Mr. Peterson pursuant to the contingency fee agreement between the Trustee and Mr. Peterson. On July 24, 2007, the Debtors received a discharge in their bankruptcy case.

The only asset of the bankruptcy estate is the estate's interest in the pending State Court Case. As of August 29, 2007, the date of the hearing on this matter, creditors had filed timely proofs of claim in the aggregate amount of $41,411.70 (including $4,860.77 in secured claims). Since the date of the hearing on this matter, creditors filed additional unsecured claims in the aggregate amount of $28,762.82. Thus, as of October 1, 2007, the deadline to file proofs of claim, the aggregate amount of claims was $70,174.52 (including unsecured claims in the amount of $47,049.58, secured claims in the amount of $4,860.77, and priority claims in the amount of $18,264.17). No creditors have objected to the Motion to Settle.

In the Motion to Settle, the Trustee contends that the proposed settlement of $9,500 is fair and equitable under the circumstances and is in the best interests of the creditors and requests that the Court approve the proposed settlement. The Debtors dispute that the proposed settlement is fair and equitable, assert that the State Court Case is worth more than

the amount offered by American and Knox and request that the Court deny the Motion to Settle.[2]

Mr. Peterson has 24 years of experience in civil litigation. During the hearing, Mr. Peterson testified that if the Trustee prevailed, the State Court Case might generate proceeds in the range of $18,000 to $75,000. However, Mr. Peterson pointed out that any such judgment against American and Knox could be subject to the defendants' right to offset the amount of the Murphy settlement against the judgment. Mr. Peterson testified that due to the substantial risk of pursuing the claims against the defendants at trial, a settlement of the matter is in the best interest of the estate. Specifically, Mr. Peterson explained that the State Court Case involves complex issues regarding professional standards and that it would be difficult to establish liability and the proportionate fault of each defendant. Each of the defendants contends that the other defendants were at fault. Mr. Peterson further explained

---

[2] The Debtors are the only parties that objected to the proposed settlement. In order to have standing to object to a proposed compromise or settlement in a bankruptcy proceeding, a person must be a "party in interest." See Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.), 998 F.2d 783, 788 (10th Cir. 1993). It is only when a debtor can show there is a reasonable possibility of a surplus after all debts are satisfied that the debtor has a pecuniary interest which would support standing. See Cult Awareness Newtork, Inc. v. Martino (In re Cult Awareness Network, Inc.), 151 F.3d 605, 608 (7th Cir. 1998); see also Nangle v. Surratt-States (In re Nangle), 288 B.R. 213, 216 (B.A.P. 8th Cir. 2003)("If the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a bankruptcy order." (citations omitted). For purposes of disposition of the Motion to Settle, the Court need not make a determination whether the Debtors in this case have a pecuniary interest that would confer standing upon the Debtors to object to the settlement agreement or the Court's approval of it. For the reasons stated herein, the Court concludes that the Debtors' Objection should be overruled and the Motion to Settle should be granted.

that because Murphy had settled and was no longer a defendant in the State Court Case, American and Knox might attempt to shift the blame to Murphy, which would frustrate the Trustee's efforts to establish liability and damages.

The State Court Case involves complex issues regarding alleged violations of building and inspection standards. In order to establish that American and Knox violated those standards, Mr. Peterson testified that the estate should retain construction and inspection expert witnesses to address the issues regarding inspection and building structural standards. Although the Debtors had previously deposed a construction expert and an inspection expert, such experts would need further trial preparation. Mr. Peterson estimated that the construction expert would cost the estate approximately $3,500, which did not include a previous balance due and owing to him for earlier deposition testimony. The inspection expert would cost an additional $1,500 to $2,000. In addition, the Trustee would need to retain a damages expert to testify regarding the diminution in value of the Debtors' property.

Mr. Peterson testified that because the property is in foreclosure and the Debtors have received their bankruptcy discharge, it would be difficult for the Trustee to establish that the Debtors were damaged by any diminution in value of the property. Mr. Peterson further explained that collection of any judgment against Knox would be difficult because Knox did not have insurance. On the other hand, collection of a judgment against American is more likely because American has sufficient insurance coverage.

Mr. Peterson concluded that there was substantial risk in litigating the State Court Case to trial and that the proposed settlement agreement is fair and equitable and in the best interest of the estate. The Court finds that Mr. Peterson is a credible witness.

Mr. Peterson's testimony was corroborated by the testimony of the Trustee. The Trustee testified that based upon the merits of the State Court Case, the cost and likelihood of success, and the difficulty to prove damages, the case would not generate a recovery high enough to justify further pursuit of the litigation. The Trustee testified that the State Court Case could not be effectively tried without the use of costly expert witnesses and that the State Court Case is the only asset of the Debtors' estate. The Trustee concluded that the value of the proposed settlement exceeds the value of the claims asserted in the State Court Case. If the proposed settlement is approved, creditors will receive a meaningful distribution.

**III.   Conclusions of Law**

Rule 9019 of the Federal Rules of Bankruptcy Procedure governs court approval of compromises and settlements. Whether to approve a proposed settlement is a matter within the Court's discretion. See Reiss v. Hagmann, 881 F.2d 890, 891-92 (10th Cir. 1989)(citation omitted). Bankruptcy courts are charged with the responsibility of ensuring that a settlement is fair and equitable and in the best interest of the debtor's estate. See Official Comm. of Unsec. Creditors of W. Pac. Airlines, Inc. v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.), 219 B.R. 575, 579 (D. Colo. 1998)(affirming bankruptcy court's approval of a debtor's settlement)(citations omitted).

The Court's decision to approve a settlement "must be an informed one based upon an objective evaluation of developed facts." Reiss, 881 F.2d at 892 (citations omitted); see also In re W. Pac. Airlines, Inc., 219 B.R. at 579.  The Court need not resolve all issues, but only identify them so that the reasonableness of the settlement may be evaluated. See In re W. Pac. Airlines, Inc., 219 B.R. at 579, *citing* In re Hermitage Inn, Inc., 66 B.R. 71, 72 (Bankr. D. Colo. 1986). The Court must evaluate: "(1) the chance of success on the litigation on the merits; (2) possible problems in collecting the judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors." Korngold v. Loyd (In re Southern Med. Arts Cos.), 343 B.R. 250, 256 (B.A.P. 10th Cir. 2006), *citing* Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.), 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997).  "The Court should also consider "the extent to which the settlement is truly the product of arms-length bargaining." In re Bugaighis, No. 03-12112-HRT, 2004 WL 3190352, at *5 (Bankr. D. Colo. Nov. 5, 2004)(citation omitted).  The Trustee, as the party proposing the settlement, bears the burden of persuasion. See In re Hermitage Inn, Inc., 66 B.R. 71, 72 (Bankr. D. Colo. 1986)(citations omitted).

Mr. Peterson, a litigator with 24 years of experience, testified that the settlement is fair and equitable in light of the merits of the case and the surrounding circumstances.  The Trustee is also qualified to evaluate the State Court Case from a plaintiff's perspective.  The Trustee also concluded that the proposed settlement is fair and equitable and in the best interest of the estate.  The Debtors failed to present any evidence to contradict the

conclusions reached by Mr. Peterson and the Trustee. Accordingly, the Trustee's Motion to Settle is granted and the Debtors' Objection is overruled.

**SO ORDERED** this 16th day of November, 2007.

*[signature]*
DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT